UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY as subrogee of McCarty Service Systems, Inc., and MCCARTY SERVICE SYSTEMS, INC., | |
| Plaintiffs, | Case No. 06-cv-915-JPG |
| v. | |
| PRODUCTION DESIGN PRODUCTS, INC., A.O. SMITH CORPORATION, and W.W. GRAINGER, INC., | |
| Defendants. | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

**I.      Background**

On January 8, 2004, a fire substantially damaged McCarty Service System, Inc.'s (McCarty) commercial laundry facility in Wood River, Illinois. The Cincinnati Insurance Company (Cincinnati), McCarty's insurer, paid McCarty for some of its losses pursuant to its policy. On December 16, 2005, Cincinnati, as subrogee of McCarty, and McCarty – seeking to recover damages it suffered in excess of its policy limit – brought this action against Production Design Products, Inc. (PDP)*, A.O. Smith Corporation (Smith) and W.W. Grainger, Inc. (Grainger) in the Circuit Court, Third Judicial Circuit, Madison County, Illinois. Plaintiffs allege that a 1/2 horsepower DC motor (Motor) manufactured by Smith, a component part of the EZ Roller mat rolling machine manufactured by PDP, caused the fire. Grainger bought the Motor from Smith and sold it to PDP.

PDP removed this case on November 9, 2006. Though the parties are not diverse – like

McCarty, Grainger is an Illinois corporation – PDP asserted this Court's diversity jurisdiction as the basis for its removal.  It asks the Court to disregard Grainger's citizenship on its claim that plaintiffs joined Grainger solely to defeat diversity jurisdiction. According to PDP, it did not become aware of this "fraudulent joinder" until it received and reviewed the motion for summary judgment Grainger filed in the state court on October 10, 2006.

Plaintiffs originally brought strict liability, negligence, and breach of warranty claims against Grainger.  On April 6, 2006, the state court dismissed the strict liability claims without prejudice pursuant to 735 ILCS 5/2-621, the so-called "seller's exception" in strict products liability cases. *See Yount v. Shashek*, No. 06-753, 2006 WL 4017975, *8 (S.D. Ill. Dec. 7, 2006). Subject to several exceptions, this statute requires a court to dismiss a non-manufacturing defendant once the manufacturer is properly before it.  735 ILCS 5/2-621(b); *Yount*, 2006 WL 4017975, at *8.  The state court declined to dismiss the remaining counts.

In its summary judgment motion, Grainger provided evidence that it tendered the Motor for delivery more than four years before plaintiffs filed suit.  Plaintiffs do not dispute that this fact bars their breach of warranty claims under the applicable statute of limitations.  *See* 810 ILCS 5/2-725.  Grainger also attached the affidavit of John Leahy (Leahy), its Category Manager of Motors and Ventilation, to its motion for summary judgment.   Grainger used this affidavit as evidence that it is merely a pass-through distributor.  According to Leahy's affidavit, Grainger did nothing but resell the Motor – it did not inspect it, package it, or repair it.  Leahy also said that Grainger sells hundreds of thousands of products purchased from nearly one thousand suppliers and that it has no in-house quality control procedures.  As a result of its limited involvement with the Motor and the nature of its business, PDP claims Grainger did not owe McCarty any of the duties alleged in the complaint.  As such, it claims plaintiffs' negligence

2

claims have no chance of success on the merits.

On December 7, 2006, plaintiffs filed their motion to remand (Doc. 9) pursuant 28 U.S.C. § 1447(c). Plaintiffs provide three intertwining bases for remanding this action. First, they claim Grainger remains a proper party to this action. Though they provide little rebutting evidence, plaintiffs dispute the facts provided in Leahy's affidavit and assert that Grainger represents publically that it is more than a pass-through distributor. They also note that PDP removed this action before they had a chance to respond to Grainger's motion for summary judgment. Second, granting hypothetically that they fraudulently joined Grainger, plaintiffs claim PDP's removal was procedurally improper because Grainger and Smith lacked capacity to consent to it. In plaintiffs' view, the "first-served defendant rule," which holds that the 30-day period for removal under 28 U.S.C. § 1446 begins to run when the first defendant has notice of facts making the case removable, *see Phoenix Container, L.P. v. Sokoloff*, 83 F.Supp.2d 928, 932-33 (N.D. Ill. 2000), precluded Smith and Grainger from consenting to PDP's removal. *See Bussey v. Modern Welding Co.*, 245 F.Supp.2d 1269 (S.D. Ga. 2003). As an effective removal requires unanimous consent among defendants, *see Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 455 (7th Cir. 2005), plaintiffs claim PDP's removal was improper. Finally, plaintiffs claim PDP, through its business relationship with Grainger and discovery, had knowledge of the facts making removal appropriate more than thirty days before it filed its notice of removal.

PDP has filed a brief in opposition to plaintiffs' motion to remand (Doc. 11). At the request of the parties, the Court heard oral arguments on the motion to remand on March 21, 2007. Having reviewed the briefs and considered the arguments of the parties at oral argument, the Court is now prepared to rule.

**II.     Analysis**

3

A.      **Propriety of Removal**

Fraudulent joinder occurs when a plaintiff names a non-diverse party solely to defeat jurisdiction. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). To establish fraudulent joinder, the removing party bears the "heavy burden" of demonstrating (*i.e.*, by clear and convincing evidence), after all issues of fact and ambiguous issues of law are resolved against it, that the plaintiff's claims have no chance of success. *Id.*[1] *See also Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). If the removing party meets its burden, a court must disregard the citizenship of the fraudulently joined party. *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993).

While courts normally make the fraudulent joinder determination by evaluating the face of the pleadings, *see, e.g.*, *Poulos*, 959 F.2d at 73, under certain circumstances it is appropriate for a court to "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995); *Hauck v. ConocoPhillips Co.*, No. 06-135, 2006 WL 1596826, at *5 (S.D. Ill. June 6, 2006); *CC Indus., Inc. v. ING/ReliaStar Life Ins. Co.*, No. 03-C-2075, 2003 WL 21360905, at *3 (N.D. Ill. June 11, 2003). This does not mean that a court should, or can, "pre-try" a case. *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000); *CC Indus., Inc.*, 2003 WL 21360905, at *3. The cases consistently hold that a court must not "step[] from the threshold jurisdictional issue into a decision on the merits." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990); *Delgado v. Shell Oil Co.*, 231 F.3d 165, 179 (5th Cir. 2000).

In *Faucett v. Ingersoll-Rand Min. & Machinery Co.*, 960 F.2d 653, 654-55 (7th Cir.

---

[1] False allegations of jurisdictional fact can also make joinder fraudulent, but PDP has not made this claim. *Poulos*, 959 F.2d at 73.

1992), the Seventh Circuit held it proper to disregard a non-diverse defendant's citizenship where the non-diverse defendant produced an uncontested affidavit showing that plaintiff could not succeed on its claim against it.  Two recent cases in this district – *Bergman v. U.S. Silica*, No. 06-356, 2006 WL 2982136, at *1 (S.D. Ill. Oct. 17, 2006) and  *Sandage v. Cottrell, Inc.*, No. 05-720, 2006 WL 2710647, at *1 (S.D. Ill. Sept. 20, 2006) –  have relied on *Faucett* in finding fraudulent joinder in circumstances similar to those at issue here.  PDP substantially grounds its opposition to the motion to remand on these cases.  In *Bergman*, the plaintiff brought strict products liability, negligence, and breach of implied warranty claims against several defendants after he developed silicosis/pneumoconiosis. 2006 WL 2982136, at *1.  The plaintiff sued his employer, the manufacturer of the silicosil products, and Lotz Trucking (Lotz), the only non-diverse defendant.  *Id.*  In response to plaintiff's interrogatories, Lotz admitted it transported the silicosil products, but said it did not manufacture, buy, sell, wholesale, or retail them.  Within 30 days after the manufacturer received this information, which was undisputed, it removed the action to federal court claiming fraudulent joinder.  *Id.*

In Illinois, an entity whose role is peripheral and "not directly related to the distributive process" is not subject to strict products liability.  *Bergman*, 2006 WL 2982136, at * 4 (citation omitted).   Because Illinois recognizes a transportation company as such an entity, Judge Herndon found that plaintiff's strict liability claims against Lotz had no chance of success.  *Id.*; *see also Lundy v. Cliburn Truck Lines, Inc.*, 397 F.Supp.2d 823 (S.D. Miss. 2005).  He found similarly with respect to plaintiff's negligence and breach of warranty claims.  As such, he concluded that plaintiff fraudulently joined Lotz and denied plaintiff's motion to remand. *Bergman*, 2006 WL 2982136, at *6-7.

In *Sandage*, the plaintiff, a commercial trucker, brought strict products liability,

negligence, and breach of warranty claims against six defendants after he was injured using a chain and ratchet tie down system to connect his rig to its trailer.  2006 WL 2710647, at *1.  The non-diverse defendants were Lisa Shashek, the alleged commercial lessor of the rig involved in Sandage's injuries, Cassens & Sons, Inc., an alleged seller and/or distributor of the trailer, and Cassens Corporation, another alleged seller and/or distributor of the trailer.  *Id*.  Through discovery, it became clear that Shashek was a financial lessor, rather than a commercial lessor, that Cassens & Sons was not in the distributive chain, and that Cassens Corporation was a holding company.  Once it obtained this information, Cottrell, Inc., one of the diverse defendants, removed the case to federal court.  *Id*. at *4-7.

Judge Reagan concluded that Cassens & Sons could not be liable under Illinois law because it was not involved in any of the transactions at issue in the case.  He held that Shashek's status as a financial lessor precluded any claim against her for strict liability or negligence under Illinois law and that the plaintiff had offered no reasonable basis for holding Cassens Corporation liable.  *Id*. at *5.  Accordingly, he determined that plaintiff fraudulently joined the three non-diverse defendants and declined to remand the action.  *Id*. at *6.

Judges Hendon and Reagan conducted summary inquiries in these cases.  In both, essentially one fact mandated the application of a categorical rule foreclosing the possibility of liability as to each fraudulently joined defendant.  Here, because Grainger was in the Motor's chain of distribution, no categorical rule forecloses the possibility that it could be strictly liable, negligent, or liable for breach of warranty.  The depth of inquiry required in this case makes it meaningfully distinguishable from *Bergman* and *Sandage*.

PDP contends that Leahy's affidavit shows Grainger cannot be liable in negligence.  The

affidavit apparently[2] contains information about Grainger's business, including the following: it distributes more than 600,000 brand name products it purchases from 800-900 suppliers, it is a pass-through business-to-business distributor, its customers are resellers and original equipment manufacturers, it distributes several thousand different models of electric motors that it buys from 30-40 different suppliers, the motors it sells are used in innumerable applications, it has no knowledge of how the motors it distributes are used by original equipment manufacturers, it does not have any control over the design or manufacturing of the Motor, its employees do not acquire knowledge of the mechanical inner workings of the Motor, it does not have in-house quality controls applicable to the Motor, it does not repackage the Motor, it does not alter the packaging of the Motor, it does not service or repair the Motor, and it does not sell products to consumers.  Based on the Court's review of this information and the relevant law, it is *inclined* to agree that Grainger does not have any of the duties alleged in the complaint.  This does not necessarily mean, however, that the Court must deny the motion to remand.

Plaintiffs base their negligence claims on Grainger's alleged duty to warn, duty to inspect, discover, repair or detect defects, and duty to provide McCarty with adequate instructions.  Whether these duties exist are questions of law for the Court, which depend upon the nature of the parties' relationship. *Ziemba v. Mierzwa*, 566 N.E.2d 1365, 1366 (Ill. 1991) ("Whether a duty exists is a question of law, and depends upon whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act

---

[2] The parties have not included a copy of the Leahy affidavit Grainger offered in support of its summary judgment motion.  The plaintiffs and PDP cite to the third exhibit to docket entry two when referencing the affidavit, but this exhibit contains the Leahy affidavit Grainger attached to its motion to dismiss, not the one it attached to its motion for summary judgment.  Despite this fact, the parties refer to this exhibit when discussing the affidavit and do not dispute its contents.

reasonably for the protection of the plaintiff."). In determining whether a duty exists, a court must weigh the foreseeabilty of the injury and its likelihood against the burden and consequences of imposing the duty. *Id*. at 1366-67. This is a fact-driven inquiry. *See Collins v. Hyster Co.*, 529 N.E.2d 303, 307 (Ill. App. Ct. 3d Dist. 1988).

The law imposes a duty to warn where the parties are not equally knowledgeable and the defendant, with its superior knowledge, knows or should know that harm might occur if it does not warn the plaintiff. *Gray v. Nat'l Restoration Sys., Inc.*, 820 N.E.2d 943, 956 (Ill. App. Ct. 1st Dist. 2004). If the facts set forth in Leahy's affidavit are true and represent the whole of Grainger's relevant activities, it is quite unlikely that Grainger acquired the knowledge necessary for the law to impose upon it a duty to warn. *See id*. at 948-50. Nevertheless, plaintiffs have offered evidence purportedly showing that Grainger may have been more involved than Leahy's affidavit suggests. Plaintiffs have offered evidence that Grainger sold the Motor under the Dayton Electric Manufacturing Co. brand name, that Dayton is a subsidiary of Grainger, and that Grainger owns the copyright for the Motor's instruction manual. (Doc. 14, Exs. E, G, H). This information is potentially relevant to a purported duty to warn and introduces a measure of doubt into accepting PDP's claims.

From the perspective of the briefs, the law on Grainger's other alleged duties is less clear. PDP cites generally to an Annotation in the American Law Reports for the proposition that one in Grainger's position does not owe one in McCarty's position duties regarding the design, manufacturing, or labeling of a product or duties to test or inspect such a product. *See* E.L. Kellett, Annotation, *Seller's Duty to Test or Inspect as Affecting His Liability for Product-Caused Injury*, 6 A.L.R. 3d 12 § 2 (1966 and Supp. 2006). PDP provides no citations to cases with similar facts applying these general principles. Instead, it relies on the consequences of

imposing these duties on Grainger, which would no doubt be great.

The issue in fraudulent joinder cases is sometimes framed as whether "there is a reasonable possibility" that the plaintiff will succeed on the merits. *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 879 (7th Cir. 1999). This question is straightforward when a court is asked to review the sufficiency of the allegations in a complaint. Once a court starts considering evidence, the inquiry becomes more difficult. In considering evidence, the cases generally say that a court should conduct a summary inquiry and refrain from making a determination on the underlying merits of the case. *See Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004) (en banc). Aside from the fact that a court necessarily comes to a decision on the merits anytime it decides that there is no possibility that the plaintiff can recover against a non-diverse defendant, distinguishing between a summary inquiry and a decision on the merits is quite difficult in practice. It becomes even more difficult when the parties have amassed a good deal of information through discovery. One thing is clear, however: it cannot be the case that a defendant can successfully claim fraudulent joinder *every* time claims against a non-diverse defendant fail to or cannot survive summary judgment.

A court pierces the pleadings and determines the scope of its inquiry in its discretion. *Smallwood*, 385 F.3d at 573. As a plaintiff's subjective motivation is irrelevant, *see Schwartz*, 174 F.3d at 879, the only guidepost seems to be the ease with which a court can come to adopt the removing party's position, *see Smallwood*, 385 F.3d at 574 ("Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."). If the inquiry is truly summary in nature, then the worry that a diverse defendant will cry fraudulent joinder every time a plaintiff fails to get past summary judgment against a non-diverse defendant is allayed.

9

In *Boyer v. Snap-on Tools Corp.*, the court pointed to *Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 881-82 (10th Cir. 1967), as an example of a case where the inquiry was appropriately circumscribed. *Boyer*, 913 F.2d at 112. In *Smoot*, the plaintiff brought claims against a railroad company and one of its employees after her decedent died when his car collided with a freight train at a railroad crossing. 378 F.2d at 881. The railroad was diverse, but its employee was not. On the face of the complaint, the plaintiff's claim against the employee was sufficient. It subsequently became known, however, that the employee stopped working for the railroad fifteen months before the collision. On these facts, the court found that the employee had been fraudulently joined. *Id.* at 882. Cases like *Bergman* and *Sandage* are archetypal. *See Smallwood*, 385 F.3d at 574 n.12 ("For example, the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true.").

PDP has failed to cite to a case where a court has found fraudulent joinder on facts similar to the case at bar. The inquiry required to determine the chance of success of plaintiffs' negligence claims is far more searching than that required in *Bergman* and *Sandage*. The facts cited by plaintiffs regarding Grainger's relationship with Dayton potentially have a bearing on the substantive inquiry into whether it had a duty to warn. While these facts may not matter in the end, they give the Court pause. The same is true for the other duties. Whether they exist in this case depends upon how the facts affect the balancing of harms. These determinations would require a level of judicial involvement that goes beyond an inquiry into jurisdiction. On the authority of *Boyer* and *Smallwood*, the Court finds that such an inquiry is inappropriate here.

There are reasons beyond the problems with plaintiffs' negligence claims that support

10

this conclusion.  In its notice of removal, the only reason PDP gave for the "fraudulent" nature of plaintiffs' breach of warranty claims was that they are time-barred.  While it is not clear from the briefs or the record before the Court, it appears that this argument implicates the "common defense rule."  Courts in this District have held that "a case-dispositive defense that can be asserted by diverse and non-diverse defendants alike is not a proper basis for a claim of fraudulent joinder, given that such defense manifestly [goes] to the merits of the action as an entirety, and not to joinder." *Bova v. U.S. Bank, N.A.*, 446 F.Supp.2d 926, 935 (S.D. Ill. 2006) (internal quotation marks omitted); *Smith v. Merck & Co., Inc.*, No. 06-882, 2007 WL 403789, at *2-3 (S.D. Ill. Jan. 12, 2007) ("To show fraudulent joinder, defendants must show a flaw specific to the joinder of the non-diverse party, which is the jurisdictionally relevant aspect of the claim.") (internal quotation marks omitted); *see also Smallwood*, 385 F.3d at 575-76; *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 153 (1914).  Because plaintiffs asserted breach of warranty claims against Grainger *and* Smith, and because *Smith* sold the Motor to Grainger, it appears that the statute of limitations would apply equally to bar plaintiffs' breach of warranty claims against Smith.  While this argument was not raised by the parties, PDP has offered nothing to rebut this claim.

A different set of concerns arises about the strict liability claims.  In Illinois, all entities in the chain of distribution of a defective product are subject to strict liability. *See Hammond v. North Am. Asbestos Corp.*, 454 N.E.2d 210, 216-17 (Ill. 1983).  Pursuant to § 5/2-621(b), non-manufacturing defendants are often dismissed when the manufacturing defendant is properly before a court, but the dismissal is without prejudice.  *See Bittler v. White & Co., Inc.*, 560 N.E.2d 979 (Ill. App. Ct. 1st Dist. 1990).  Under certain circumstances – when, for example, the manufacturer cannot satisfy a judgment or reasonable settlement – the plaintiff may "move to

11

vacate the order of dismissal and reinstate the certifying defendant or defendants." 735 ILCS 5/2-621(b).   The parties have not made an issue of PDP and Smith's respective financial positions or the nature and extent of their liability insurance, but it is certainly possible that plaintiffs will not be able to obtain full relief from these defendants. Whether this is more than a "mere theoretical possibility of recovery" is unclear.   *See Smallwood*, 385 F.3d at 573 n.9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4. (5th Cir. 2000)).   Again, PDP has not offered enough on this score.   For all the reasons detailed above, the Court finds that PDP has failed to meet its heavy burden of establishing fraudulent joinder.

### B.   Attorneys' Fees

Plaintiffs ask the Court to award them their attorneys' fees and costs in this action pursuant to 28 U.S.C. § 1447(c).   "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."   *Martin v. Franklin Capital Corp.*, 126 S.Ct. 704, 711 (2005).   Though the Court has ultimately disagreed with PDP's arguments, they were not frivolous.   The plaintiffs have failed to demonstrate unusual circumstances justifying the award of costs and fees in this case.   *See Orbitz, LLC v. Worldspan, L.P.*, 425 F.Supp.2d 929, 933 (N.D. Ill. 2006); *Bova*, 446 F.Supp.2d at 941.   Accordingly, the Court denies plaintiffs' request for attorneys' fees and costs.

## CONCLUSION

The Court **GRANTS** plaintiffs' motion to remand (Doc. 9) and hereby **REMANDS** this action to the Circuit Court, Third Judicial Circuit, Madison County, Illinois, for all further

12

proceedings.

**IT IS SO ORDERED.**
**DATED: April 3, 2007**

                                     **s/ J. Phil Gilbert**
                                     **J. PHIL GILBERT**
                                     **DISTRICT JUDGE**